616 F.2d 92
 35 Fair Empl.Prac.Cas. 1523,
22 Empl. Prac. Dec. P 30,722
Lucy SANFORD, Shirley Black, Mari Pritchard, Patricia
Sullivan, Carolyn Carter, Brenda Williams and
Ernestine McCullough, Appellants,
v.
Joseph F. O'NEILL, the Philadelphia Police Department, and
the City of Philadelphia, Appellees.
 No. 79-1945.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 7, 1980.
Decided March 6, 1980.
 
 Helen T. M. McCaffrey (argued), Philadelphia, Pa., for appellants Sullivan, Carter, Williams and McCullough.
 Frank Finch, III (argued), Public Interest Law Center of Philadelphia, Philadelphia, Pa., for appellants Sanford, Pritchard, Black and Waters.
 Agostino Cammisa (argued), Asst. City Sol., Sheldon L. Albert, City Sol., Stephen T. Saltz, Deputy City Sol., Philadelphia, Pa., for appellees.
 Before GIBBONS, ROSENN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 The parties to this appeal will undoubtedly be disheartened by our disposition, for we do not reach the merits of their dispute. Unfortunately, the procedural quagmire out of which this appeal arises precludes any substantive resolution of the claims asserted. These procedural defects require us to vacate the district court's order granting summary judgment to the defendants and remand to the district court.
 
 I.
 
 2
 To understand the context in which the present appeal reaches us, we must recount some of the prior proceedings, for this case represents still another in a long line of appeals arising out of sex discrimination litigation against the City of Philadelphia and its Police Department in the Eastern District of Pennsylvania.[1]
 
 
 3
 The litigation began on February 12, 1974 with the filing of a class action against the Police Department by Penelope Brace, then a policewoman. Within a week after Brace's action was commenced, the United States filed suit against the City of Philadelphia charging a pattern or practice of discrimination in its Police Department in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1976). This latter proceeding, captioned United States v. City of Philadelphia, was assigned district court docket No. 74-400 and was consolidated with Brace's action.[2] The City did not dispute its practice of discrimination against women and its policy of hiring them only as Juvenile Aid Officers, but rather asserted a bona fide occupational qualification (BFOQ) defense; it claimed that only men could function effectively as police officers. After entry of a consent decree on March 5, 1976, the action was stayed for two years to allow the Police Department to enlist women and study their effectiveness as police officers. The study has since been completed and the district court, after trial on this issue, rejected the City's BFOQ defense.[3]
 
 
 4
 The eight named plaintiffs[4] in the instant class action are women who passed the Civil Service examination for police officers and who sought employment when the Department began accepting women pursuant to the March 5, 1976 consent decree. Four of them, Sanford, Pritchard, Black, and Waters, began training at the police academy on March 6, 1978, and were dismissed on March 31, 1978 for failing the firearms qualification test. A fifth plaintiff, Sullivan, began training at the police academy in July, 1977, and was dismissed shortly thereafter for being overweight. The remaining three plaintiffs were all rejected by the Department from the outset and never entered the academy McCullough in 1977 and Carter in 1978 for being overweight,[5] and Williams in 1976 for a medical condition.
 
 
 5
 In its pattern or practice suit, district court docket No. 74-400, the United States filed a motion for a preliminary injunction on April 3, 1978 to require reinstatement in the Police Department of Sanford, Pritchard, Black, and Waters.[6]
 
 
 6
 On April 10, 1978, the complaint in the instant suit, district court docket No. 78-1154, was filed. This complaint named as plaintiffs the four who were the subject of the injunctive proceeding brought by the United States. In addition, it named the four other applicants, Sullivan, Carter, McCullough and Williams. This complaint alleged not only violations of Title VII, for which a jury trial was unavailable, but also deprivations of constitutional rights. A jury trial was requested for these latter claims. Counsel in No. 78-1154 moved to intervene in the United States's suit, No. 74-400; the motion was orally granted at a hearing held February 27, 1979.
 
 
 7
 In November, 1978, some months after the United States's preliminary injunction motion and the complaint in this case were filed, the City filed a motion for summary judgment in both cases. The motion, however, was not addressed to all the named plaintiffs in No. 78-1154, but was restricted to the four women who had failed to meet the firearms qualification test, Sanford, Pritchard, Black and Waters, and who were the subject of the United States's preliminary injunction motion. The City's motion made no reference to the other four plaintiffs, Sullivan, Carter, McCullough or Williams. No supporting affidavits were filed with the motion.[7]
 
 
 8
 With the proceedings in this posture, a hearing was held in the district court on February 27, 1979. The hearing transcript is entitled "Evidentiary Hearing," and, indeed, two of the plaintiffs, Pritchard and Waters, testified. They described the firearms qualification procedures and the instruction that they received. The district court concluded the hearing with the following remarks:
 
 
 9
 THE COURT: We have one other problem with the people that have a weight problem. I don't know that we have to have any testimony on that. I am pretty sure we can all agree to that.
 
 
 10
 Can I see you at sidebar for a moment?
 
 
 11
 (Sidebar discussion off the record.)
 
 
 12
 THE COURT: The affidavits are to be submitted and the Depositions.
 
 
 13
 Mr. Saltz (counsel for the City), you may file whatever objections you have, and anybody who wants to file documents may do so.
 
 
 14
 The argument before us on appeal focused in large part on the nature of this February 27, 1979 hearing. There was uncertainty among the plaintiffs, an uncertainty now shared by this court, as to the purpose of the hearing. A variety of possible purposes were suggested by the parties. It was suggested that, inasmuch as the district court had determined in its opinion two weeks earlier that the Police Department had engaged in a pattern or practice of discrimination, the hearing could have been the "second stage" proceeding contemplated by the Supreme Court in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), for determining the relief appropriate to individual class members in a pattern or practice suit. See 431 U.S. at 361, 97 S.Ct. at 1867. It was also suggested that the hearing could have been to determine whether the preliminary injunction sought by the United States to reinstate Sanford, Pritchard, Black, and Waters should issue. A third possibility suggested was that the hearing was in fact a trial of the merits of the claims raised by the eight named plaintiffs in the instant suit, No. 78-1154. Finally, in light of the disposition actually made by the district court, the thought was expressed that the hearing was scheduled to assist the district court in resolving the City's motion for summary judgment. Neither the parties nor the district court made any effort to specify the particular purpose for which the hearing was held; it appears that each party had its own view of the hearing, and no two views agreed.
 
 
 15
 After the hearing had concluded, the record, as best as we painstakingly have been able to reconstruct it, consisted of affidavits of Pritchard, Sanford, and Black, which had accompanied the United States's motion for preliminary injunction; the February 27th "evidentiary hearing," which included testimony of Pritchard and Waters; and affidavits of Williams, Carter and Sullivan, filed after the February 27, 1979 hearing and cryptically entitled "Affidavits in Support of Evidentiary Hearing of Plaintiff-Intervenors." These latter affidavits dealt wholly with disqualification on weight and medical grounds. The record does not disclose any affidavits filed by the defendant City, but it does reveal that depositions had been taken of a number of police officers who were instructors at the police academy.
 
 
 16
 The substance of these materials before the district court may be briefly summarized. The materials submitted on behalf of Pritchard, Sanford, Black, and Waters told the story of their entry into the police academy and their dismissal shortly thereafter when they failed the firearms qualification test. They claimed that they were told after their failure to qualify that they had no need to be concerned, since no man had ever failed to qualify after a sufficient number of tries. They claimed that they were led to believe that they had until May 17, 1978 to qualify. (They were dismissed March 31, 1978.) They also claimed that male trainees had received more individual instruction. They stated their belief that sex discrimination was a factor in their dismissal.
 
 
 17
 The affidavits of Sullivan and Carter, respectively dismissed from and denied admission to the academy on the grounds of weight, told of arbitrary application of weight standards, of having been approved and disapproved on different occasions at the same weight, and of further rejections despite losing prescribed amounts of weight. No evidentiary materials were submitted on behalf of McCullough, but she, too, alleges in the complaint arbitrary application of weight standards. They all state their conviction that sex was a factor in their rejection.
 
 
 18
 An affidavit from Williams complained of being rejected on the grounds of cancer of the cervix and a hysterectomy, when these conditions had been successfully treated, had been asymptomatic for years, and had never hampered her work in any way. She, too, charges discrimination on the basis of sex.
 
 
 19
 The deposition of Chief Inspector Bridgeford, director of the academy, and those of several academy instructors were taken in advance of the hearing and were submitted to the district court. The depositions reveal that men and women are afforded the same arms training; that problem "shooters" all receive additional instruction; that women especially receive extra chances to qualify; and that one male trainee in 1973 had remained at the academy for 52 days without qualifying. Bridgeford stated that no men since 1972 had been dismissed for failure to qualify. One instructor testified that two men had been dismissed, and another simply stated that some men had.
 
 
 20
 Presented with these materials, the district court issued a memorandum opinion and order on May 17, 1979. In its memorandum, the district court discussed the firearms qualification test and determined that the plaintiffs had not established a prima facie case of sex discrimination in violation of Title VII. With little consideration of the apparent factual disputes, and with no discussion of the standards governing summary judgment, the opinion concluded by stating "We therefore grant defendants' motion for summary judgment." The order accompanying the memorandum similarly stated that "The motion of defendant for summary judgment is GRANTED." Although the defendants' motion papers only discussed the four plaintiffs included in the government's motion for a preliminary injunction, the district court, without explanation, granted summary judgment in the City's favor against all the plaintiffs.
 
 
 21
 After the district court entered summary judgment, the plaintiffs moved for relief from judgment under F.R.Civ.P. 60(b). Before the court ruled on the 60(b) motion, the plaintiffs filed a notice of appeal from the order granting summary judgment. The court ruled on the 60(b) motion on October 26, 1979. In an order that is not now before us on appeal, the district court denied the motion as to all plaintiffs except Williams.[8] In doing so, the district court made reference to its earlier order as follows: "The defendants filed a motion for summary judgment which was granted by this Court by Opinion and Order dated May 17, 1979." The plaintiffs in this appeal claim that the district court's decision of May 17, 1979 must be reversed because summary judgment could not properly be granted. We agree and reverse.
 
 II.
 
 22
 There can be no question but that the district court disposed of the plaintiffs' claim on summary judgment. We do not choose to construe the district court's decision as anything other than what the district court itself declared it to be three times in its opinion, order, and ruling on the 60(b) motion a summary judgment disposition. Cf. Carter v. Hewitt, 617 F.2d 961 at n. 3 (3d Cir. 1980) (order granting "summary judgment" construed as final factual determination where the Magistrate expressly declared that a hearing would resolve disputed factual contentions and where all parties admitted their understanding that final determination was contemplated); Nielsen v. Western Electric Co., 603 F.2d 741, 743 (8th Cir. 1979) ("summary judgment" construed as final determination where district court and all parties treated hearing as full trial of factual issues and where all relevant evidence was presented).
 
 
 23
 Thus, we must determine whether summary judgment was appropriate in this case. If the record reveals disputed contentions of material fact, the summary judgment cannot stand. On a motion for summary judgment the court is called upon not to resolve factual differences but only to determine if any exist. And in making this determination, every reasonable inference must be afforded the party opposing the motion, here, the plaintiffs. Drexel v. Union Prescription Centers, Inc., 582 F.2d 781, 790 (3d Cir. 1978); Braden v. University of Pittsburgh, 552 F.2d 948, 966-67 (3d Cir. 1977) (en banc) (Garth, J., concurring).
 
 
 24
 That material factual disputes exist is quite plain. Four plaintiffs allege discriminatory administration of the firearms qualification test that they received less individual instruction than men and less time to qualify, and that no men had been dismissed on this basis and the defendants deny it. Summary judgment is, of course, inappropriate to determine these contentions.
 
 
 25
 Three other plaintiffs claim discriminatory and arbitrary administration of weight standards. The City has not submitted any evidence relating to its weight standards by which these claims may be measured. Thus, any conflict between the plaintiffs' claims and the City's position on its administration of weight standards (whatever they may be) had not yet even emerged; such a conflict of course could not appropriately be the subject of a summary resolution. Thus, regardless of how we might characterize the hearing held on February 27, 1979, and regardless of the applicable standard of review, it is plain that the district court's determination against these plaintiffs cannot be sustained.
 
 
 26
 Moreover, another compelling reason for vacating the summary judgment here is that the plaintiffs demanded a jury for trial of their constitutional claims brought under 42 U.S.C. § 1983. The February 27, 1979 hearing, since it was conducted without a jury, could not properly resolve the parties' contentions. The district court never considered in its opinion the relationship between the plaintiffs' § 1983 and Title VII claims or the need for a jury trial. Thus, the order of May 17, 1979, which stemmed from the February 27th hearing, and which purported to resolve all disputes between all plaintiffs and the City, obviously could not properly do so.
 
 III.
 
 27
 In sum, the record on this appeal discloses: (1) unresolved and disputed material facts; (2) the absence of a final hearing; (3) a summary judgment motion addressed to only four named plaintiffs but granted against all eight; and (4) an order entered after a non-jury evidentiary hearing that disposed of all claims, including those claims to be tried by a jury.
 
 
 28
 We have set forth the procedural intricacy of this case in great detail only to demonstrate the clear impropriety of a summary disposition at this stage. No appropriate disposition, in light of the other proceedings, had been made of the government's motion for a preliminary injunction. The plaintiffs who were dismissed from the police academy for their failure to qualify with firearms had been given only the most limited opportunity to present their claim of discrimination. The remaining plaintiffs had not even been afforded this much opportunity. And what little evidence had been presented demonstrated either contested or unrebutted allegations of discrimination. It is evident that summary judgment was not the sword to cut the Gordian knot that had resulted from the tying of the plaintiffs' case to the United States's pattern or practice suit, and from the cross-proceedings that the parties had initiated.
 
 
 29
 The district court's order of May 17, 1979 will be vacated and the cause remanded for further proceedings consistent with this opinion.[9] Costs will be taxed against the appellees.
 
 
 
 [1]
 Prior appeals before this court include Brace v. O'Neill, 567 F.2d 237 (3d Cir. 1977) and United States v. City of Philadelphia, 573 F.2d 802 (3d Cir.), cert. denied, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978) (addressing seven consolidated appeals)
 
 
 [2]
 A more detailed recital of the initial proceedings and their consolidation may be found in Brace v. O'Neill, 567 F.2d 237 (3d Cir. 1977)
 
 
 [3]
 In February, 1979, the district court, inter alia, ordered the Police Department to develop new criteria for hiring and promotion and to submit these criteria to the court for approval. The Department thereafter developed a physical performance test, but began using it without prior submission to or approval of the district court. This unauthorized use of the test was enjoined by an order dated September 5, 1979
 
 
 [4]
 Only seven names appear in the caption of this appeal. The eighth individual, claimed by the plaintiffs' brief to be a named plaintiff in this case, is Rose Waters. Her name does not appear in the caption of the district court docket sheet or the caption of the complaint. Nor does the complaint specifically refer to her by name. The plaintiffs' brief asserts that this is simply a "clerical error." Her status as a named plaintiff in this class action should be resolved upon remand
 
 
 [5]
 The plaintiffs' brief at one point refers to McCullough's weight as the basis of her rejection, Plaintiffs' Brief at 9, and, at another point, attributes her rejection to grounds other than weight, id. at 35
 
 
 [6]
 The United States at this time also moved for reinstatement of Hazel Pryor, who, like the other four women, had been dismissed for failing the firearms qualification test. Pryor is not a plaintiff in the instant suit
 
 
 [7]
 The plaintiffs in No. 78-1154 claim that the City's summary judgment motion was filed only in the United States's action, No. 74-400. They also claim that not all counsel of record in No. 78-1154 received notice of this motion, and attribute this lack of notice to the City's failure to file the motion in No. 78-1154 as well as in No. 74-400. The City's Notice of Motion, however, does list docket No. 78-1154, the motion is entered on the docket sheet in No. 78-1154 under date of November 28, 1978, and the record in No. 78-1154 includes a certification of mailing notice of the motion to counsel of record in that case
 
 
 [8]
 Williams was ordered reinstated subject to the condition that she waive any claim to benefits for disabilities due to any malignancy not related to service as a police officer. The parties agreed at oral argument that her appeal has been mooted
 
 
 [9]
 In light of the procedural tangle into which the parties have been drawn, the district court may wish to structure future proceedings in both cases in a manner which will avoid problems similar to those that have been encountered so far. We express no view as to what actions, if any, should be taken, as we believe such actions are appropriate for consideration by the district court in the first instance